IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RAVENNA SPENCER,            )
       Plaintiff,            )    Civil Action No. 09-123 Erie
                             )
       v.                    )
                             )
CITY OF PHILADELPHIA, et al., )    Magistrate Judge Susan Paradise Baxter
       Defendants.           )

## MEMORANDUM OPINION AND ORDER[1]

**Magistrate Judge Susan Paradise Baxter**

**Relevant Procedural History**

      Plaintiff, a state inmate acting *pro se*, originally filed this civil rights action on July 7, 2009. A convoluted procedural history ensued, most of which need not be related here. Plaintiff continued to represent himself in this case until August 12, 2011, when Attorney John Mizner entered his appearance on behalf of Plaintiff in this and other federal cases. Following the appointment of counsel, the Third Amended Complaint was filed on October 19, 2011. ECF No. 78.

      In the Third Amended Complaint, Plaintiff names the following Defendants: Correctional Officer Sergeant Bush; Correctional Officer Scoles; Correctional Officer Lieutenant Vojacek;

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. See ECF Nos. 85, 86.

1

Dorina Varner, Chief Grievance Officer; and Brian Coleman, Superintendent of SCI-Fayette.[2] Defendants are sued in their individual capacities.

Around December of 2008, Plaintiff, an inmate incarcerated at SCI-Fayette, was called out for an authorized temporary absence (ATA) in order to testify in Philadelphia. Plaintiff packed three boxes of personal property and Defendant Bush took possession of those boxes. ECF No. 76, ¶ 7-8. Because Plaintiff was only permitted to take one box of property with him to the Philadelphia jail, Defendant Correctional Officer Bush put two boxes of Plaintiff's property in storage. Id. at ¶ 13. Upon Plaintiff's return to SCI-Fayette in January of 2009, he sought to retrieve the two boxes from storage. Id. at ¶ 26. These two boxes were never returned to Plaintiff and their loss forms the basis of this lawsuit.

Plaintiff advances the following causes of action: Count I – Access to Courts; Count II – First Amendment Retaliation; Count III – Equal Protection; Count IV – Due process; Count V – § 1983 Conspiracy; Count VI – Replevin; Count VII – Bailment; Count VIII – Conversion; and Count IX – Intentional Interference with Prospective Contractual Relations. All counts are advanced against all five Defendants, with the exception of Count VII, Bailment, which is only directed against Defendant Bush. ECF No. 76.

In response to the Third Amended Complaint, Defendants filed a motion to dismiss. Defendants move to dismiss on several bases. ECF No. 77. Plaintiff has filed a brief in opposition to the pending dispositive motion. ECF No. 80. The issues are fully briefed and are ripe for disposition by this Court.

---

[2] The Original Complaint named other parties including the City of Philadelphia, Sheriff Mackie and Department of Corrections Secretary Jeffrey Beard. There are no claims raised against these original defendants in the Third Amended Complaint and so those original parties were terminated from this action as of October 19, 2011.

**Standard of Review - Motion to dismiss pursuant to 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
> > First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

Several exhibits have been attached to pleadings at this stage of the litigation. However, the use of these exhibits by this Court does not convert Defendants' motion to dismiss for failure to state a claim into a motion for summary judgment. Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment."). In ruling upon the Defendant's motion to dismiss, the Court may consider and take judicial notice of the docket sheets and court records in Plaintiff's cases before the state and federal courts. Id.

4

citing 62 Fed. Proc. L.Ed. § 62.520; Anaspach v. City of Philadelphia, 503 F.3d 256, 273 n.11 (3d Cir. 2007) (court may take judicial notice of public records when ruling on rule 12(b)(6) motions to dismiss).

**The Exhaustion Requirement of the Prison Litigation Reform Act**

    **1.  The Act**

Defendants argue that Plaintiff's claims against Scoles, Vojacek, Varner and Coleman should be dismissed for failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

Id.[3]

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136

---

[3] It is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. 199, 217 (2007) ("...failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). Instead, the failure to exhaust must be raised by the defendants. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

(Unpublished Opinion) (10th Cir. May 8, 1997).[4]  The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow.  Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[5]

      The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal."  Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) (" Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

---

[4]  Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction.  Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[5]  There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

### 2. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance for review by the facility manager or the regional grievance coordinator within fifteen days of the incident, who responds in writing within ten business days. Second, the inmate must timely submit a written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

Pursuant to Department of Corrections' Policy DC-ADM 804, grievances must include "a statement of the facts relevant to the claim." The grievance "must identify any person(s) who may have information that could be helpful in resolving the grievance." Id. See also Spruill, 372 F.3d at 233; Williams, 482 F.3d at 639-40. Additionally, the policy provides that "you should

submit a different grievance for each different event unless it is necessary to combine the events to support the claim." Id.

### 3. Plaintiff's Utilization of the Grievance Process

On February 5, 2009, Plaintiff filed a grievance seeking the return of the two boxes of property, specifically complaining about the conduct of Defendant Bush. Id. at ¶ 37. Grievance #260806 reads:

> On 2-1-09 Sgt. Bush was working the RHU[.] I asked him about my two boxes of property that was left in his care the day I left[.] He told me he would call and check on it but he never did[.] I need my two boxes[.] It is very important including hundreds of documents for my criminal and civil cases[.] This denies my access to courts[.] I had several documents which are essential including but not limited to affidavits, declarations, and other exibits [sic][.] I also had two lawsuit in there that yet to be[.] In addition I had several legal and personal pictures[.] Also a book I wrote and books that I bought including (G-spot, Miseducation of the Negro, How to Love a Black Woman, and A Prisoner's Wife)[.] Note Sgt. Bush can verify that I also had legal books which were the Prison Self Help Litigation Manual, Jailhouse Lawyers Manual, and Protecting Your Health and Safety[.] All I ask is that my two boxes be returned to me[.] I need it imediately[sic][.]

ECF No. 76-1, Exhibit attached to Amended Complaint, page 18.

Defendant Vojacek filed a response to the initial grievance indicating that the boxes Plaintiff referenced in his initial grievance would be provided to Plaintiff within a week.[6]

---

[6] The response read:

> The two boxes in question are not missing. In fact, they have been on L-Unit for quite some time now. You will receive a property inventory, property downsizing, and legal exchange within a week of the date listed below [2/19/2009]. This coincides with your request on grievance #206805. This grievance is to be considered resolved.

ECF No. 76-1, page 9.

8

On February 22, 2009, Plaintiff was allowed to review a box of property which did not contain the missing legal documents. ECF No. 76, ¶ 41. Plaintiff became upset and a verbal confrontation ensued between Plaintiff, Scoles, and Vojacek. Id. at ¶ ¶ 42–46.

On March 2, 2009, Plaintiff filed an appeal of his initial grievance, explaining:

> On 2-27-09 I received the initial response. I went and inventoried my property on 2-22-09 and neither of my two boxes of legal material were there. I talked to Lt. Vojacek and he told me when the Superintendent call him about my appeal he gonna tell them I had two boxes. This is a lie. First they should have done an inventory sheet when I inventoried my property. This was not done and when I went and inventoried this property it was one box with sneakers in it. [illegible] box is not neither of two boxes that was full with legal material that had legal books. This box had no books and it had sneakers. Sgt. Bush can attest that the boxes I had books and neither of them had sneakers inside. In addition you always believe what your officer say over the prisoner. Here is a perfect chance to do so. On 1-5-09 I came back from writ and I was written up for attempting to get these two boxes. I never received them. See Misconduct A763029. I need these boxes. I had two lawsuits I anticipated filing and documents for several others including 06-1099 which are essential to that case. Again, Sgt. Bush can attest in neither one of my boxes had sneaks and both of them had [illegible].

ECF No. 76-1, page 10.

Superintendent Coleman issued a Response to the First Level Appeal on March 17, 2009, referencing property which went missing in July of 2008. Id. at 11.[7]

On March 23, 2009, Plaintiff filed this Appeal to the Central Office:

> I received the Superintendent's response today 3-23-09 and I write this appeal already knowing that the grievance process is fixed against me and that Dorina Varner will conspire with the Superintendent, Lt. Vojacek, Sgt. Bush, and

---

[7] In the Response, Defendant Superintendent Coleman wrote: I am in receipt of your appeal of grievance #260806. In preparing this response I have reviewed your original grievance, the Grievance Officer's response, and your appeal to this office. The response to grievance #236001 written 7/17/2008 explains your alleged missing property. You were extracted from your cell on 7/3/08. Once you were extracted from the cell, it was discovered that all of your property was covered with high volumes of feces and OC. This in turn created a biohazard due to the feces covering all your property. Therefore, as a safety precaution to both staff & other inmates your property was destroyed in order to prevent contamination. You also received a DC-154A regarding this property & its disposition. Sgt. Bush has no knowledge of the boxes that you are referring to in your grievance. I find nothing in your appeal offering any credible evidence that your property is missing. ECF No. 76-1, page 11.

9

> Philadelphia County Sheriffs to deprive me of my property which included thousands of legal documents including affidavits, exhibits, mental health documents regarding my civil case 06-1099. I also had two anticipated lawsuits with affidavits, grievance responses. I also had several documents regarding my criminal case I cannot access the courts on the above numbered civil case. The two lawsuits I anticipated filing and is making it difficult to litigate my criminal case. In addition I had legal and personal books. Those books are The Prisoner Self-Help Litigation Manual, Protecting Your Health and Safety, The Jail House Lawyer's Manual, G-Spot, Mis-Education of the Negro, How to Love Black Woman, and Prisoner's Wife, and a book that I wrote called Get In Where You Fit In which I had a publishing contract on the table for. Now to address the merits of the grievance I had some pictures personal and legal. The personal pictures were dear to me. Also (1) the initial grievance officer Lt. Vojacek acknowledged that the boxes were on L-block on 2-19-2009 I explained in the initial grievance whet that content of these two boxes were and Vojacek said they were on the unit but they weren't in my property when I seen it. (2) The Superintendent contended that the property was destroyed in July of 2008. This is a clear blaten [sic] lie with willful intentions of depriving me of my property. How could this particular property be destroyed in July 2008 when in the initial grievance Lt. Vojacek admitted to having these two boxes in February 2009 (Please look at the initial grievance) Superintendent Coleman has reckless disregard for the truth. In addition when I came back from writ (court) on January 5, 2009, Officer Scoles wrote misconduct A763029 (which is attached). In misconduct A763029, he acknowledges that he had these boxes. This is an initial conspiracy to deprive me of my property. I know that Central Office is not going to give me any relief. I know that Dorina Varner is going to indulge in a conspiracy to deprive me of my property by going into an agreement with the Superintendent when there is evidence that the Superintendent is lying. His version is fabricated. Please answer this how could the property be destroyed July 08 when in the initial grievance response Lt. Vojacek acknowledges having it and misconduct A763019 proves that the property was there on 1-5-09 the same day I came from court and the initial grievance acknowledged that they had the property on 2-19-09. This is not only conspiracy but it is retaliation because of grievances I filed and lawsuits including the two I anticipated filing and had a book contract for my book.

Id. at 13.

By Final Appeal Decision issued April 17, 2009, Chief Grievance Office Dorina Varner responded:

> You state in your grievance that you are missing two boxes of property. Lt. Vojacek conducted an investigation into your allegations. The record reflects that when you returned ATA you had two boxes of property that you did not have when you left SCI Fayette. The record reflects that these two boxes did not

10

> contain any legal material but property that you received while on ATA. The record reflects that your property issue (two boxes of legal material) was addressed in Grievance #236001 and will not be re-addressed in this appeal. You have not provided any proof that you are missing two boxes of legal material and books. Due to the fact that you have not proven that you had two boxes of legal material missing, your request to have the boxes returned is denied.

Id. at 15.

**4.    Analysis**

Defendants move to dismiss based upon Plaintiff's failure to fully comply with the PLRA's exhaustion requirements.

In the present case, Plaintiff has exhausted his claim of lost property by raising it through all three levels of the administrative remedy process, and Defendants acknowledge as much. ECF No. 78, page 6. However, the subject matter of the initial grievance is limited to deprivation of personal property and access to courts. In the initial grievance, Plaintiff does not raise any claims regarding retaliation, Equal Protection, or conspiracy, and did not allude to any facts which could even liberally be construed as raising such claims. Although Plaintiff mentions retaliation and conspiracy in his Final Appeal to Central Office, these claims were not presented in the initial grievance and so are not properly exhausted since DC-ADM 804 provides that an inmate "may only appeal issues that were raised" in the initial grievance.

Accordingly, those claims not raised in the initial grievance (retaliation at Count II, Equal Protection at Count III, and conspiracy at Count V) will be dismissed. Because this Court finds the reasoning above with respect to Plaintiff's failure to exhaust his federal claims equally applicable to his failure to exhaust his state law claims (see Schott v. Doe, 2007 WL 539645, at *8 (W.D. Pa.)), the state law claims at Counts VI – IX will be dismissed.

Additionally, the only person named in the initial grievance is Defendant Sgt. Bush. As such, Plaintiff has failed to properly exhaust his administrative remedies against any other named Defendant. Although Mr. Spencer added new names at each level of appeal (most notably, naming the official who responded at the previous level of review), this is not sufficient for proper exhaustion under DC-ADM 814. Furthermore, prison officials cannot be held liable for their part in the administrative remedy process.[8]  Accordingly, Defendants Scoles, Vojacek, Varner and Coleman will be dismissed from this action.

**Count I - Access To Courts Claim**

Plaintiff alleges that Defendant Bush violated his constitutional rights by denying him access to courts. Defendants move to dismiss arguing that Plaintiff has failed to state an access to courts claim upon which relief may be granted.

Prisoners have a constitutional right to "adequate, effective and meaningful" access to the courts. Bounds v. Smith, 430 U.S. 817 (1977).[9] It is a well settled principle of law that in order to state a claim for a denial of the right of access to the courts, a plaintiff must also show actual injury. Lewis v. Casey, 518 U.S. 343 (1996). Prisoners are limited to proceeding on access to

---

[8]  In order for an individual defendant to be found liable in a civil rights action, the individual "must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*." Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). See also Rizzo v. Goode, 423 U.S. 362 (1976). The supervisor must be personally involved in the alleged misconduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) quoting Rode, 845 F.2d at 1207.  If an official's only personal involvement is in investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official. Rode, 845 F.2d at 1208.

[9] The right of access to courts may arise in the context of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection Clause. See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

courts claims challenging either their sentence (by direct or collateral attack) and their conditions of confinement, as the "impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id. at 355.  A plaintiff must allege both an underlying cause of action, whether anticipated or lost, and official acts frustrating the litigation. Christopher v. Harbury, 536 U.S. 403 (2002).

In order to state an access to courts claim, "[w]here prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) quoting Christopher, 536 U.S. at 415.  "To that end, prisoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" Id.

In other words, Plaintiff Spencer is required to allege that he lost the opportunity to pursue a nonfrivolous or arguable underlying legal claim and that there is no other remedy available to him.  Here, Plaintiff alleges that the loss of his property resulted in actual injury in three underlying cases: *Spencer v. Maxwell*; *Spencer v. Vojacek*; and *Spencer v. Collings*.  ECF No. 76, ¶¶ 69-98.  In support of the motion to dismiss, Defendant Bush argues generally that Plaintiff's access to courts has not been denied because he "is/was an active litigator," citing to numerous filings in other cases during the relevant time frame. See ECF No. 78, page 8.  This is a misapplication of the law.  In order to determine whether Plaintiff has stated an access to courts

13

claim, this Court must review the three underlying cases as alleged by Plaintiff. It is of no moment to this Court's analysis that Plaintiff was actively litigating other matters.

*Spencer v. Maxwell*

The Third Amended Complaint explains that the *Maxwell* case was pending in the United States District Court for the Middle District of Pennsylvania, Scranton Division, at C.A. No. 06-1099, at the time of the loss of Plaintiff's legal materials. Plaintiff's claims were based on the actions of prison mental health officials at SCI-Camp Hill revealing his private mental health information to others.[10] Id. at ¶ 70. In December of 2008, Magistrate Judge Blewitt issued two Report and Recommendations recommending the entry of summary judgment on behalf of Defendants. Objections to those Report and Recommendations were due on December 29, 2008, and January 2, 2009, respectively. Id. at ¶ 71. Plaintiff received several extensions of time to file his Objections which were finally due by April 30, 2009. Id. The District Court did not receive any Objections from Plaintiff prior to May 1, 2009, and summary judgment was entered against Plaintiff. Id. at ¶ 72.

Plaintiff filed Objections on May 5, 2009. Id. at ¶ 73. Plaintiff filed an appeal to the United States Court of Appeals for the Third Circuit which ordered that the District Court's order entering summary judgment be vacated and the case remanded for further proceedings. Id. at ¶ 74. Thereafter, the District Court considered Plaintiff's Objections on their merits, and entered summary judgment in favor of Defendants. Id. at ¶ 75.

Allegedly, the missing Spencer Property contained affidavits from witnesses Eric Maple and Amin Mustafa, as well as mental health records and Department of Corrections procedure

---

[10] A review of the docket sheet of the Middle District reveals that other claims had previously been dismissed. Pryor, 288 F.3d at 560 (court may take judicial notice of docket sheets from other courts).

manuals which were essential to Plaintiff's Objections in the *Maxwell* case.  Id. at ¶ 77.  Plaintiff argues that because he did not have access to his documents, he could not adequately prepare his Objections.  Id.  Allegedly, if Plaintiff had all of these missing documents, he would likely have been able to draft Objections sufficient to permit his allegations to survive summary judgment.  Id. at ¶ 78.

Because these allegations are well-pleaded allegations, this Court must assume their veracity at this stage of the litigation.  Burtch, 662 F.3d at 221.  Plaintiff has set forth an access to courts claim in that he has pled an actual injury, as well as a lost remedy.  While it will be his burden to prove these allegations at trial, the allegations are sufficient to survive the motion to dismiss.

*Spencer v. Vojacek*

Next, Plaintiff alleges that the missing boxes of property contained documents relating to a civil action he intended to file against Vojacek and Coleman.  Id. at ¶ 79.  This action was based upon Defendants' refusal to allow Plaintiff to receive greeting cards in the mail because of a determination that they were "gang related."  Id. at ¶ 80.  This purported civil action would have asserted the following causes of action:  1) defamation due to the public allegations that Plaintiff was involved in gang-related activity; 2) deprivation of rights under the First Amendment to be free from undue censorship of mail and to express himself; 3) retaliation due to Plaintiff's association with the greeting card company; and 4) violation of Plaintiff's right to due process of law by depriving him of his protected liberty interest in his reputation under the "stigma-plus" test due to government-occasioned defamation and the associated loss of his property and his protected property interest in his mail.  Id. at ¶ 82.

The missing boxes of property allegedly contained "a complaint that Mr. Spencer was in the process of drafting" (id. at ¶ 83), as well as "an affidavit … from witness Donell Drinks relevant to that case" (id. at ¶ 84). Plaintiff claims that because he was deprived of his property, he has suffered actual injury in that given that the statute of limitations has now passed, he is forever precluded from bringing these claims into court. Id. at ¶ ¶ 85-86.

This alleged underlying action does not provide the basis for an access to courts claim. Although Plaintiff generally alleges that he is **now** (as of October 19, 2011, the date of the filing of the Third Amended Complaint) precluded by the statute of limitations from pursuing this anticipated legal action, Plaintiff has not alleged that **at that time** of the loss of the property, his claim became time-barred. The Third Amended Complaint does not allege when the underlying defamation action accrued or when the statute of limitations expired. Presumably, Plaintiff could have redrafted the complaint and filed it after the loss of the property. The loss of the affidavit from the witness is inconsequential to our analysis of the access to courts claim here as witness affidavits are not essential to the **filing** of a lawsuit. Additionally, it is far from clear that Plaintiff could not have pursued this action even if the statute of limitations had expired during the relevant time period as statute of limitations are subject to waiver, estoppel, and equitable tolling.

*Spencer v. Collings*

Finally, Plaintiff alleges that the missing boxes of property contained documents relating to a civil action he intended to file against Correctional Officer Donald Collings. ECF No. 76, ¶ 87. This action was based upon Defendant's "intentionally and maliciously slamming Mr. Spencer's hand in a food slot, thereby causing him serious injury and pain" (id. at ¶ 88) and

thereby violating Plaintiff's Eighth Amendment rights to be free from cruel and unusual punishment (id. at ¶ 90).

Allegedly, the missing boxes of property contained a complaint and "other documents that Mr. Spencer was in the process of drafting to pursue these claims" (id. at ¶ 91), as well as an affidavit from witness Lenard Mathews relevant to the contemplated suit (id. at ¶ 93). Plaintiff claims that because he was deprived of his property, he has suffered actual injury in that given that the statute of limitations has now passed, he is forever precluded from bringing these claims into court. Id. at ¶ 94.

As with the *Spencer v. Vojacek* matter, this anticipated filing also fails to provide the basis for an adequate access to courts claim. Plaintiff has not alleged when the underlying Eighth Amendment claim accrued or when the statute of limitations expired, nor has he alleged why he could not have redrafted the complaint and filed it after the property was lost.

The motion to dismiss the access to courts claim is denied as the *Spencer v. Maxwell* provides the factual basis upon which the access claim rests. However, neither the *Spencer v. Vojacek* nor the *Spencer v. Collings* case provides the factual basis upon which an access to courts claim may rest and they will be dismissed.

**Count IV - Due Process**

At Count IV, Plaintiff alleges that his due process rights have been violated by the loss of his personal property.

The analysis of a due process claim stemming from the deprivation of a property interest focuses on the existence of a post-deprivation remedy. An unauthorized, intentional deprivation

17

of property by government employees does not violate the Due Process Clause so long as there is a "meaningful post-deprivation remedy" available to the plaintiff.  Hudson v. Palmer, 468 U.S. 517, 533 (1984).  See also Tillman , 221 F.3d at 421 ("[W]here it is impractical to provide meaningful pre-deprivation process, due process will be satisfied by a meaningful post-deprivation remedy.").  In Hudson, the Supreme Court reasoned that an intentional deprivation cannot be controlled in advance so as to adequately provide any pre-deprivation process.  Id.  See also Parratt v. Taylor, 451 U.S. 527 (1981) (held that a negligent deprivation of property by state officials does not violate the Fourteenth Amendment if an adequate post-deprivation state remedy exists), overruled on other grounds, Daniels, 474 U.S. 327.  Thus, Plaintiff has no viable claim under the Constitution if an adequate post-deprivation remedy was available to him.  The prison grievance system has been deemed an adequate post-deprivation remedy.  Tillman, 221 F.3d at 421.

This Court takes judicial notice of the fact that the Department of Corrections has a grievance system in place. Because Plaintiff had adequate post-deprivation remedies available to him to contest the loss of his personal property, his due process claim fails.  Plaintiff concedes as much in his Opposition Brief.  See ECF No. 80, page 17.

Accordingly, the motion to dismiss will be granted as to the due process claim at Count IV.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAVENNA SPENCER,** | ) | |
| Plaintiff, | ) | Civil Action No. 09-123 Erie |
| | ) | |
| v. | ) | |
| | ) | |
| **CITY OF PHILADELPHIA, et al.,** | ) | Magistrate Judge Susan Paradise Baxter |
| Defendants. | ) | |

**O R D E R**

AND NOW, this 2nd day of April, 2012;

IT IS HEREBY ORDERED that the motion to dismiss [ECF No. 77] is granted in part and denied in part. The motion to dismiss is granted insofar as Counts II – IX and Defendants Scoles, Vojacek, Varner, and Coleman. The Clerk of Courts is directed to terminate these named Defendants from the docket. The motion to dismiss is denied as to Count I and Defendant Bush.

A Case Management Order will be issued separately.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge